## WARREN FOWLES
### *v.*
## ISAAC VALLANDIGHAM.

VENDOR — *when cannot defeat his own sale by a subsequent acquisition of title.* Where a vendor sold chattels, which, at the time of such sale, he had no title to, but afterward acquired the title, and without having paid any new consideration therefor, he cannot, by virtue of such subsequently acquired title, defeat the sale to his vendee.

APPEAL from the Circuit Court of Jersey county; the Hon. DAVID M. WOODSON, Judge, presiding.

The facts in this case are stated in the opinion.

Messrs. WARREN & POGUE, for the appellant.

Messrs. A. L. & R. M. KNAPP, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action of replevin, brought by Fowles against Vallandigham, and growing out of the following facts: In March, 1864, Billings & Parsons, as joint owners of certain land in Jersey county, sold it, by a verbal contract, to Fowles, who agreed to pay $2,000 on the 1st of November, following, and to execute, at that time, his notes for the residue of the purchase-money. Fowles took possession and cut from the land a considerable quantity of cord-wood and staves, without, however, procuring the consent of either Billings or Parsons. Fowles failed to comply with his contract, and, in January, 1865, Billings & Parsons sold and conveyed the land to John

and Thomas Lock. One Bernard, who is not a party to this record, was in partnership with Fowles in cutting the wood and staves, and, on the 29th day of December, 1864, acting in the name of the firm of Fowles & Bernard, he sold the same to the defendant Vallandigham. A part of the staves and wood had been hauled by Fowles & Bernard to the landing, near Randolph, on the Mississippi. Bernard gave Vallandigham a bill of sale in the name of the firm, acknowledging the receipt of $300 in payment, and concluding in these words: "This lot of stuff is only subject to the chopping and stave making bills, and any claims that the owners of the land, other than us, may have upon them." When Billings & Parsons sold the land, in January, 1865, they received the same price which Fowles had agreed to pay, and in view of this fact, and because Fowles had made some improvements on the land, they gave him the cordwood and staves. He then replevied them from Vallandigham, and judgment having gone against him in the Circuit Court, he brings the record here.

It is insisted by the counsel for Fowles, that the clause above quoted from the bill of sale, is to be regarded as a stipulation, that they sold the property subject to the title of Billings & Parsons, and therefore, that there was no warranty against that title, and that they or either of them had the same right to acquire that title which a third person would have had, and to assert it as against their vendee.

Whether this would be true, if Fowles had subsequently acquired the title of Billings & Parsons for a new consideration, and independently of his contract made with them in the preceding March, is a question not necessary to be decided. Billings & Parsons undoubtedly owned the property, and if they had chosen to assert their title, and thereupon Fowles had bought it from them, perhaps the result contended for by his counsel would have followed. On that point we express no opinion. But as a matter of fact, they asserted no title, and made no claim to the property, and Fowles did not acquire it from them by any new contract. There is no conflict of evidence on this point. The only witness is Mr. Billings, who

acted throughout for Billings & Parsons, and it appears by his testimony, that inasmuch as they lost nothing by the failure of Fowles to comply with his verbal contract of purchase, and as he had made some improvements on the land, which they did not wish to appropriate for nothing, Mr. Billings thought proper when he sold the land to the Locks in January, to recognize Fowles as having an equitable title to the wood and staves, and therefore, in the language of the witness, he "gave" Fowles this property. Mr. Billings properly enough speaks of the transaction as a "gift," but he explains the inducement to it as we have above stated. It simply amounted to this, that inasmuch as Fowles had, under a contract of purchase, made improvements on the land, of which Billings & Parsons were receiving the benefit in their sale to Lock, they would refrain from asserting their legal title to the wood and staves. Fowles had no equity under his verbal contract, which the law would protect, and Billings & Parsons were under no legal obligation to recognize him as having any interest in the wood, but in a spirit of liberality they thought proper to do so. In consideration of improvements that must have been made by him before he and his partner sold the wood and staves to Vallandigham, they chose to treat him as having an equitable claim upon them, and forebore to assert their title to this property. This equity, such as it was, and which we call an equity because Billings & Parsons thought proper to treat it as such, was in existence when Vallandigham bought, and passed to him, and he, and not his vendors, should receive the benefit of its recognition by Billings & Parsons. Suppose Fowles had paid $500 on the land in March, 1864, and had executed what is called a forfeit contract, and gone into possession without leave, cut wood, and sold it, with the same proviso in the bill of sale that we find in the one before us. Suppose, further, on his failure to make his second payment, Billings & Parsons had pronounced the contract forfeited and re-sold the land, but had said to Fowles, that in consideration of the $500 paid by him, he might have what wood he had cut. Can it be pretended, that thereupon Fowles, under pretense of having acquired a new title, which would

not inure under the language of the bill of sale, could recover from his own vendees the wood he had sold them? The law can tolerate no such double dealing, and this hypothetical case does not differ in principle from the one at bar.

Mr. Billings in his testimony states the circumstances as follows:

"In consideration of the sale of the land to said Locks for the same price ($20 per acre) and for a further consideration that Fowles claimed for improvements made on said land, and not wishing the benefit of Fowles' labor, we gave to him at the time the deed was made to the Locks, all the cord-wood and staves that had been cut off the S½ of section 23, and hauled to the landing at Randolph, on the Mississippi river, and also all the staves that were on the said S½ section 23 at that time."

By the proviso in the bill of sale, the wood and staves were sold, subject to the claims of the owners of the land. They forebore to assert their claim, except by the recognition of that same title in Fowles, which he had already sold to Vallandigham. There is no controversy in regard to the facts, and the judgment of the court below is so clearly right, that we do not deem it necessary to consider whether there was a technical error in the instructions.

*Judgment affirmed.*